IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO REINO SOTORRIO,

    Plaintiff,

    v.                                    CIVIL NO. 04-2202 (RLA)

EL HIPOPOTAMO, INC., et al.,

    Defendants.

### ORDER IN THE MATTER OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants have moved the court to enter summary judgment dismissing the instant complaint. The court having reviewed the memoranda filed by the parties hereby rules as follows.

The complaint charges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 29 U.S.C. 621-634 and Law No. 100 of June 30, 1959, 29 P.R. Laws Ann. § 146 (2002) ("Law 100"), a local discrimination statute. In the alternative, plaintiff seeks relief for wrongful termination pursuant to Law No. 80 of May 30, 1976, 29 P.R. Laws Ann. §§ 185a-185k (2002) ("Law 80") and for torts under art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990).

### THE FACTS

The following facts are undisputed based on the evidence submitted by the parties.

Plaintiff, ROBERTO REINO SOTORRIO, was born on August 8, 1929.

MR. REINO worked at El Hipopotamo Restaurant since 1986 as a sandwich-maker. Plaintiff's duties included making sandwiches,

preparing food trays, snacks, ham and cheese plates and garlic bread for the tables. These duties remained the same during the years 2002 and 2003. On a daily basis, plaintiff prepared between 250 to 300 sandwiches. His regular work shift was from 7:00 a.m. to 3:00 p.m.

On September 16, 2002, a corporation owned by defendant, FRANCISCO ALMEYDA, and his brother, JUAN ALMEYDA, bought El Hipopotamo Restaurant.

After the purchase of the Restaurant, FRANCISCO ALMEYDA took control of its management and was responsible for its entire operation with the assistance of MANUEL PICATOSTE, the previous general manager.

MR. PICATOSTE worked as the Restaurant's manager from 6:00 a.m. to 6:00 p.m. and was plaintiff's direct supervisor.

ENRIQUE NAVARRETE worked as night manager until December 2002.

Some time after the ALMEYDA brothers bought the Restaurant, plaintiff's work schedule was modified to 7:00 a.m. to 2:00 p.m.

On December 16, 2002, plaintiff's working hours were reduced from 48 hours a week to 40 hours a week with Sundays and Mondays off.

On October 17, 2003, ALMEYDA returned a plate of "serrano" ham plaintiff had sent to the kitchen for preparation of a "caldo gallego" soup.

ALMEYDA subscribed an October 17, 2003 memorandum addressed to plaintiff admonishing plaintiff for his reaction to the ham incident.

On October 18, 2003 MR. PICATOSTE advised plaintiff that his work shift would change to the night shift, i.e., 4:00 p.m. to 12:00 midnight, effective the following Monday.

In a memorandum to the file dated October 18, 2003 PICATOSTE indicated that plaintiff threatened ALMEYDA and used foul words and gestures.

Plaintiff left work on October 18, 2003 and never returned.

SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law.

Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact,

only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Further, any testimony used in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006); Carmona v.

Toledo, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, Quiñones v. Buick, 436 F.3d 284, 290  (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). The affidavit must contain facts which are admissible in evidence. Lopez-Carrasquillo v. Rubianes, 230 F.3d at 414. "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

Lastly, motions for summary judgment must comport with the provisions of Local Rule 56(c) which, in pertinent part reads:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

This provision specifically requires that in its own statement of material facts respondent either admit, deny, or qualify each of movant's proffered uncontested facts and for each denied or qualified statement cite the specific part of the record which supports its denial or qualification. Respondent must prepare its separate statement much in the same manner as when answering a complaint.

The purpose behind the local rule is to allow the court to examine each of the movant's proposed uncontested facts and ascertain whether or not there is adequate evidence to render it uncontested. *See*, <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d 32, 33 (1st Cir. 2001) (summary judgment should not "impose [upon the court] the daunting burden of seeking a needle in a haystack"); *see also*, <u>Leon v. Sanchez-Bermudez</u>, 332 F. Supp.2d 407, 415 (D.P.R. 2004).

Apart from the fact that Rule 56(e) itself provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted" in discussing Local Rule 311.12, its predecessor, the First Circuit Court of Appeals stressed the importance of compliance by stating that the parties who ignore its strictures run the risk of the court deeming the facts presented in the movant's statement of fact admitted. *See*, <u>Cosme-Rosado v. Serrano-Rodríguez</u>, 360 F.3d 42 (1st Cir. 2004) ("uncontested" facts pleaded by movant deemed admitted due to respondent's failure to properly submit statement of contested facts). "[A]bsent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'" <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (citing <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 931 (1st Cir. 1983)).

## ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual... because of such individual's age." 29 U.S.C.  623(a)(1). Under the ADEA, an employer is liable if age was the motivating factor in the employer's decision. "That is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome'." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Thus, in this case, Plaintiff has the burden of establishing that defendant intentionally discriminated against him based on his age. *See*, Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998).

A plaintiff may prove his case through the use of direct evidence or absent direct evidence of discrimination, through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 25 (1st Cir. 2001); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Feliciano v. El Conquistador, 218 F.3d 1, 5 (1st Cir. 2000).  Under the *McDonnell Douglas* procedural framework, the plaintiff must prove that: (1) he was over forty (40) years of age; (2) his job performance was sufficient to meet his employer's legitimate job expectations; (3) he experienced an adverse employment action; and

(4) the employer continued to need the services of the position claimant occupied. *See*, Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005); De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004); González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002); Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993).

Once plaintiff has complied with this initial prima facie burden the defendant must "articulate a legitimate nondiscriminatory reason" for the challenged conduct at which time presumption of discrimination fades and the burden then falls back on plaintiff who must then demonstrate that the proffered reason was a "pretext" and that the decision at issue was instead motivated by discriminatory animus. Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003); Gu v. Boston Police Dept., 312 F.3d 6, 11 (1st Cir. 2002); Gonzalez v. El Dia, Inc., 304 F.3d at 69; Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002); Feliciano v. El Conquistador, 218 F.3d at 5; Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d. 46, 54 (1st Cir. 2000). "At this third step in the burden-shifting analysis, the *McDonnell Douglas* framework falls by the wayside because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Feliciano v. El Conquistador, 218 F.3d at 6 (citing Texas Dept. of Community

**CIVIL NO. 04-2202 (RLA)**                                        **Page 10**

Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal citations and quotation marks omitted).

The required prima-facie-case showing generates a rebuttable presumption that the defendant-employer violated the ADEA. Whereupon, the burden of production -- as distinguished from the burden of proof -- shifts to the defendant-employer to articulate a legitimate, nondiscriminatory basis for its adverse employment action. Once this limited burden has been met by the defendant-employer, the presumption which attended the prima facie case vanishes and the claimant must adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action. The plaintiff-employee may meet her burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the factfinder in turn may, but need not, infer the alleged discriminatory animus.

Gonzalez v. El Dia, 304 F.3d at 68-69 (citations omitted).

"Upon the emergence of such an explanation, it falls to the plaintiff to show both that the employer's proffered reasons is a sham, and that discriminatory animus sparked its actions." Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000) (citation and internal quotation marks omitted). "The plaintiff must then show, without resort to the presumption created by the prima facie case, that the employer's explanation is a pretext for age

discrimination." Rivera-Aponte v. Rest. Metropol # 3, Inc., 338 F.3d at 11.

Defendant's "burden is one of production, not persuasion" Reeves, 530 U.S. at 142, 120 S.Ct. 2097, 147 L.Ed.2d 105, and "[a]t all times, the plaintiff bears the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Gu v. Boston Police Dept., 312 F.3d at 11 (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207). *See also*, Reeves, 530 U.S. at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105.

The fact that the reasons proffered by the employer are discredited by plaintiff does not automatically mandate a finding of discrimination. "That is because the ultimate question is not whether the explanation was false, but whether discrimination was the *cause* of the [conduct at issue]. We have adhered to a case by case weighing. Nonetheless, disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude the employer had discriminated." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d at 45 (citations omitted)(italics added); Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097, 147 L.Ed.2d 105. Plaintiff's challenges to defendant's proffered reasons is not sufficient to meet his burden. *See*, Ronda-Perez v. Banco Bilbao Vizcaya, 404 F.3d 42, 44 (1st Cir. 2005). Rather, "[t]he question to be resolved is whether the defendant's explanation of its conduct, together with any other evidence, could reasonably be seen by a jury

not only to be false but to suggest an age-driven animus." *Id*. *See also*, <u>Candelario Ramos v. Baxter Healthcare Corp. of P.R.</u>, 360 F.3d 53, 56 (1st Cir. 2004).

Thus, in a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to his [age] to raise a genuine issue of material fact." <u>Zapata-Matos v. Reckitt & Colman, Inc.</u>, 277 F.3d at 45; <u>Rivas Rosado v. Radio Shack, Inc.</u>, 312 F.3d 532, 534 (1st Cir. 2002). Summary judgment will be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. <u>Santiago-Ramos v. Centennial</u>, 217 F.3d at 57; <u>Rodriquez-Cuervos v. Wal-Mart Stores, Inc.</u>, 181 F.3d 15. 20 (1st Cir. 1999).

Strict adherence to the *McDonnell Douglas* procedural paradigm is not imperative when ruling on a summary judgment. "'[A] court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus.'" <u>Calero-Cerezo v. U.S. Dept. of Justice</u>, 355 F.3d 6, 26 (1st Cir. 2004) (citing <u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d 526, 535-36 (1st Cir. 1996)).

### (a) Constructive Discharge

Plaintiff argues that the change in his work schedule was tantamount to a constructive discharge and therefore, amounted to an "adverse employment action" under ADEA. "'Just as the ADEA bars an employer from dismissing an employee because of his age, so too it bars an employer from engaging in a calculated, age-inspired effort to force an employee to quit. Accordingly, a constructive discharge can ground an employment discrimination claim.'" De la Vega, 377 F.3d at 117 (*citing* Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

> [T]he purpose of the constructive discharge doctrine [is] to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job. The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign.

Ramos v. Davis & Geck, Inc., 167 F.3d 727, 732 (1st Cir. 1999). *See also*, Feliciano-Hill v. Principi, 439 F.3d 18, 27 (1st Cir. 2006); Vieques Air Link, Inc. v. U.S. Dep't of Labor, 437 F.3d 102, 108 (1st Cir. 2006).

In order to establish a claim based on constructive discharge "plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake

his job rather than to submit to looming indignities." <u>Landrau-Romero</u>
<u>v. Banco Popular de P.R.</u>, 212 F.3d 607, 613 (1st Cir. 2000) (citations
and internal quotations omitted); <u>Jorge v. Rumsfeld</u>, 404 F.3d 556,
562 (1st Cir. 2005); <u>Simas v. First Citizen's Fed. Credit Union</u>, 170
F.3d 37, 46 (1st Cir. 1999); <u>Serrano-Cruz v. DFI Puerto Rico, Inc.</u>,
109 F.3d 23, 26 (1st Cir. 1997). *See also*, <u>Melendez-Arroyo v.</u>
<u>Cutler-Hammer de P.R. Co., Inc.</u>, 273 F.3d 30, 36 (1st Cir.2001)
("treatment so hostile or degrading that no reasonable employee would
tolerate continuing in the position").

### (b) The Evidence

### (i) <u>Legitimate Work Expectations</u>

Defendants contend that the ADEA claim fails because plaintiff
has not adduced the necessary evidence to establish various of the
prima facie elements set forth in *McDonnell Douglas*, i.e., (1) meet
the employer's legitimate job expectations, (2) suffer an adverse
employment action and (3) the employer's failure to treat age
neutrally.

In support of their contention that plaintiff's performance was
not within the employer's expectations, defendants cite the following
events: that plaintiff received many telephone calls during working
hours regarding horse races; that on one occasion plaintiff was
reprimanded for allowing a kitchen employee to read the newspaper
reserved for customers. Plaintiff was admonished that in the future
he would be charged the cost of the newspaper.

According to defendants, on October 17, 2003, plaintiff was reprimanded by FRANCISCO ALMEYDA for sending a "serrano" ham to the kitchen for the cook to prepare a "gallego" stew and responded using foul language. Plaintiff argues these were leftovers not adequate for the customers and denied using such language.

ALMEYDA contends that at the October 17, 2003 meeting, when plaintiff was advised of the change of schedule, plaintiff threatened ALMEYDA and again used foul language and gestures. Plaintiff denied this allegation. Additionally, PICATOSTE discredited this version and even recanted on a prior memorandum subscribed by him where plaintiff was charged with using foul language. [Tr. 27].

We find that there is sufficient evidence that, if credible to the jury, would lead them to conclude that plaintiff's job performance was satisfactory. Not only did plaintiff contest defendants' version of the alleged events indicative of his poor performance but apart from the October 17 and 18, 2003 memoranda, there are no other negative reports in plaintiff's personnel file. Rather, both PICATOSTE and NAVARRETE indicated that plaintiff was complying with his work and that there were no complaints in this regard.

### (ii) Adverse Personnel Actions/Pretrext

Plaintiff alleges that he was subjected to a series of adverse personnel actions such as: (1) reduction of his working hours, (2) changes in the medical plan, (3) various reprimands and (4) forced to resign.

According to the evidence submitted, the reduction in working hours was a general administrative measure which affected other employees and was aimed at reducing the over-time hours and the payroll so no discriminatory inference can be made. Similarly, the changes in the medical plan were taken as a cost-saving mechanism and all employees had available the same new plan. Further, the reprimands did not result in any substantial change in the terms or conditions of plaintiff's employment.

Defendants contend that the change in plaintiff's work schedule did not constitute a constructive discharge because defendants were never notified of any health condition which would prevent plaintiff from working the night shift. However, this version appears contradicted by evidence in the record.

MR. NAVARRETE indicated that while in his prior employment he was approached by FRANCISCO ALMEYDA to come work for him at El Hipopotamo. During the conversation MR. ALMEYDA mentioned that plaintiff would have to go because "he had done the best he was gonna do; that he was not gonna do any (sic) much more." [Tr. 17]. Thereafter, when NAVARRETE was working at El Hipopotamo, on various occasions ALMEYDA stated "[t]his grumpy old man has gotta go" referring to plaintiff. [Tr. 19].

According to PICATOSTE, when instructed to change plaintiff's work schedule in October 2003, ALMEYDA indicated that "[plaintiff] is not going to be able to stand it, and he's going to have to leave." [Tr. 22].

In his deposition, plaintiff testified that when he was advised of the change in work schedule he alerted both PICATOSTE and ALMEYDA that he could not work at night because he lived far away and could not drive at night for health reasons. ALMEYDA then responded that there was no other alternative available so that plaintiff could either take it or otherwise leave.

Defendants contend that plaintiff's work schedule was changed because plaintiff was always complaining about the excessive work and that he was tired. ALMEYDA indicated that the information pertaining to plaintiff's complaints was not personally known to him but that it was relayed by PICATOSTE. However, both PICAPOSTE and NAVARRETE testified in their respective depositions that they never heard MR. REINO complain about too much work or work volume.

Additionally, defendants contend that the decision was also taken because plaintiff had insulted ALMEYDA for which reason ALMEYDA did not want plaintiff near him. In other words, the decision was taken for reasons unrelated to age. However, as previously noted, plaintiff's alleged insults and disrespectful behavior are in controversy.

Accordingly, contrary to defendants' position, we find that there is sufficient evidence proffered by plaintiff to create a genuine issue of fact as to whether the reasons adduced for the change in schedule were pretextual. Further, there is evidentiary support for plaintiff's contention that the decision to change his work schedule to the night shift was motivated by age bias.

Additionally, the testimony of DRS. DAMARIS TORRES and JULIAN VAZQUEZ-PLARD sufficiently supports plaintiff's position that he should not drive at night due to his medical conditions. The special diet needs for plaintiff's diabetes as well as the side effects of his medication for trigeminus neuralgia clearly counseled against him working and driving at night. Accordingly, a night shift in plaintiff's particular situation would have resulted in a substantial change in the terms or conditions of his employment.

### (iii) Replacement

Lastly, defendants argue that plaintiff failed at the last prong of the *McDonnell Douglas* paradigm because he was not replaced as a sandwich-maker but rather his duties continued to be performed by co-workers who had previously helped out during rush hours and covered him in his days off. However, outside a reduction in force situation[1] a terminated plaintiff need not have to be replaced in order to meet the last *McDonnell Douglas* prima facie component. The fact that the duties of the dismissed employee were reassigned to current employees rather than specifically designating a replacement does not preclude the presumption of discrimination under these circumstances. "Rather, to establish the replacement element, [plaintiff] had to show that

---

[1] In Rodriguez-Torres, 399 F.3d at 59 n.4 the court distinguished the replacement concept within a reduction in force situation as previously discussed in LeBlanc and an ordinary termination of employment case. In a reduction in force scenario evidence that an outsider was recruited to fill a position held by an employee victim of a lay-off may be indicative of pretext but not so if the duties are reassigned among current employees inasmuch as that is the essence of a reduction in force move.

CIVIL NO. 04-2202 (RLA)                                          **Page 19**

[defendant] had a continuing need for the work that [plaintiff] was performing prior to her termination. [Plaintiff] did not, however, have to show that the replacement was new to the company or specially designated as such." Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d at 59. (internal citation omitted).

Based on the foregoing, we find that plaintiff met his burden under the *McDonnel-Douglas* paradigm and that defendants' proffered reasons for the change in work schedule have been sufficiently challenged. Accordingly the request to dismiss the ADEA claim is **DENIED**.

### HOSTILE WORK ENVIRONMENT

Hostile work environment claims are actionable under the ADEA. *See*, Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001). In order "[t]o prove a hostile-work-environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe end pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive. When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id*. (citations and internal quotation marks omitted).

We do not find evidence in the record of conduct severe and pervasive enough to create an objectively hostile environment based on plaintiff's age.

Accordingly, the hostile work environment claim is **DISMISSED**.

### LAW 100

Law 100 is the local equivalent of ADEA providing for civil liability, *inter alios*, for age discrimination in employment.[2] De La Vega v. San Juan Star, Inc., 377 F.3d 111, 119 (1st Cir. 2004); Alvarez-Fonseca v. Pepsi Cola de Puerto Rico Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998); Varela Teron v. Banco Santander de Puerto Rico, 257 F.Supp.2d 454, 462 (D.P.R. 2003). The federal and state statutes differ, however, on their respective burden of proof allocations. Alvarez-Fonseca, 152 F.3d at 27; Varela Teron, 257 F.Supp.2d at 463. *See*, Ramos v. Davis & Geck, Inc., 167 F.3d 727, 734 (1st Cir. 1999) ("significant differences in the burden of proof requirements under the ADEA and Law 100").

The most salient distinction between these two discrimination statutes is that Law 100 establishes a rebuttable presumption of discrimination[3] unless the employer can demonstrate that the action

---

[2]  In pertinent part, the statute provides:

> Any employer who... fails or refuses to hire or rehire a person... on the basis of... age... shall incur civil liability....

29 P.R. Laws Ann. § 146.

[3]  In pertinent part § 148 provides:

> Any of the acts mentioned [in section 146] shall

in dispute was justified. Alvarez-Fonseca, 152 F.3d at 27. In contrast to ADEA, in order to dissipate the presumption the employer carries the burden of establishing that its decision was not based on age. At this stage the defendant's burden is one of persuasion, not only of production as in ADEA. *Id.*

The Law 100 presumption is triggered when a plaintiff presents evidence that some adverse personnel action was taken without "just cause". The statute initially requires that plaintiff present evidence that the action complained of - in this case change of work schedule - was taken without just cause.[4] Varela Teron, 257 F.Supp.2d at 463. *See also,* De La Vega, 377 F.3d at 119; Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)) ("'Under Law 100, a plaintiff establishes a prima facie case of age discrimination by (1) demonstrating that [she] was... discharged, and (2) alleging that the decision was discriminatory.'"); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52,  62 (1st Cir. 2005) (sanctioning jury instructions which required plaintiff "to *prove* that she was in a protected class, that she was fired *and* that the termination was *unjustified*." (italics in original)).

---

be presumed to have been committed in violation [of this law] whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character.

[4]  The Puerto Rico Supreme Court has determined that the term "just cause" in Law 100 will be construed in accordance with its definition in Law 80 of May 30, 1976, 29 P.R. Laws Ann. §§ 185a-185k (2002) an analogous statute applicable to unjust terminations of employment. Baez Garcia v. Cooper Labs., Inc., 120 PR Dec. 145, 155 (1987). *See also*, Alvarez-Fonseca, 152 F.3d at  28.

Once a plaintiff proves the termination was "unjust" the burden shifts to the employer. Rodriguez-Torres, 399 F.3d at 62. "'[I]n order to rebut the Law 100 presumption, the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory age animus.'" Ramos v. Davis & Geck, Inc., 167 F.3d at 734 (citing Alvarez-Fonseca, 152 F.3d at 27-28). If the employer proves that its decision was justified the presumption disappears and "the burden of proof on the ultimate issue of discrimination remains with the plaintiff". Alvarez-Fonseca, 152 F.3d at 28.

Despite the different evidentiary paths the parties must follow in proving age discrimination in this particular case, the result under Law 100 in this case is the same as in the ADEA claim. We find that the presumption of discrimination was triggered by plaintiff. Further, there are issues of fact regarding whether or not the decision to change plaintiff's work schedule was motivated by plaintiff's age.

Accordingly, the request to dismiss the Law 100 claim is **DENIED**.

### LAW 80

Law 80, also known as Puerto Rico Wrongful Discharge Act, seeks to protect individuals in their employment by requiring employers to indemnify them if discharged "without just cause".  P.R. Laws Ann. tit. 29, § 185a (Supp. 1998).

Because there is enough evidence for a trier of fact to conclude that the change in plaintiff's working conditions was tantamount to

**CIVIL NO. 04-2202 (RLA)**                                    **Page 23**

a termination "without just cause" the request to dismiss this particular claim is **DENIED**.

### ART. 1802

We agree with defendants' argument that there is no allegation in the pleadings of an independent cause of action based on negligence nor is there any mention thereof in plaintiff's memoranda.

Accordingly, the claims asserted under art. 1802 of the Puerto Rico Civil Code are **DISMISSED**.

### CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (docket No. **38**)[5] is **DENIED** except for plaintiff's hostile work environment and negligence claims which are hereby **DISMISSED**. Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 11th day of May, 2007.

                              S/Raymond L. Acosta
                              RAYMOND L. ACOSTA
                         United States District Judge

---

[5] *See*, Plaintiff's Opposition (docket No. **45**); Defendants' Reply (docket No. **50**) and Plaintiff's Sur-reply (docket No. **52**).